UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THIEN CHI HUU NGUYEN,<br><br>Plaintiff,<br><br>v.<br><br>HUNG CAO, *et al.*,<br>Defendants. | Case No. 3:25-cv-05100-TMC<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

Plaintiff Thien Chi Huu Nguyen filed this case against Defendant Carlos del Toro ("the Navy"),[1] alleging that the Navy discriminated against him based on his race, color, national origin, and age when it rescinded his tentative job offer for an electronics engineer position at the Naval Undersea Ware Center ("NUWC") in Keyport, Washington. Dkt. 10. Based on the same rescission, Mr. Nguyen also alleges that the Navy retaliated against him for Equal Employment Opportunity ("EEO") activities from 2010 and 2014. *Id.*

[1] At the time Mr. Nguyen filed this case, the Secretary of the Navy was Carlos del Toro. Hung Cao, the current acting Secretary of the Navy, is automatically substituted for del Toro under Fed. R. Civ. P. 25(d). The Clerk is therefore directed to amend the caption to reflect Hung Cao as the Defendant.

Now before the Court are the Navy's motion for summary judgment and Mr. Nguyen's motion for dispositive relief, which the Court construes as a motion for summary judgment. Dkts. 45, 50. The undisputed record shows that the Navy rescinded the tentative offer only after Mr. Nguyen was unable to obtain an interim security clearance and the Navy needed to fill the position promptly. Mr. Nguyen has not presented sufficient evidence from which a reasonable jury could find that this explanation was pretextual, and he has not established a prima facie case of retaliation. The Court therefore GRANTS the Navy's motion for summary judgment and DENIES Mr. Nguyen's motion for dispositive relief.

## II. BACKGROUND

### A. Factual Background

Mr. Nguyen is a 67-year-old American citizen of Vietnamese descent. Dkt. 10 at 5; Dkt. 45 at 2. He served as an electronics engineer at the Naval Air Systems Command in New Jersey and Maryland before 2010. Dkt. 48-1 at 2–3. He later took early retirement. *Id.* at 2. Before this case, Mr. Nguyen filed two EEO complaints, one in 2010 and another in 2014. *Id.* at 3. The 2010 complaint concerned Mr. Nguyen's termination from employment with the Naval Air Systems Command in New Jersey and was later resolved through a court-approved settlement. *Id.* The 2014 complaint arose after Mr. Nguyen was not selected for a different position at the Naval Sea Command in California and did not result in relief. *Id.*

In early 2019, the NUWC had an open electronics engineer position, which required a security clearance. Dkt. 48-2 at 4. The hiring manager Dan Weston Baker, then the Applied Technology Branch Head at NUWC, sought to fill the position quickly because of staff shortages and upcoming projects. Dkt. 46 ¶¶ 1–3.

In February 2019, Mr. Nguyen applied for the position, at age 59. Dkt. 48-4 at 3. Following a telephone interview, Baker extended a tentative job offer to Mr. Nguyen, which he

accepted. Dkt. 48-2 at 6; Dkt. 48-9. The offer stated that Mr. Nguyen had been "tentatively selected" and explained that he would receive an official offer only after completing all "pre-employment requirements," which included a secret security clearance. Dkt. 48-9 at 2; *see also* Dkt. 48-7 at 5. Because Mr. Nguyen did not possess an active security clearance, the Navy began the background-investigation process—also called the eQIP process—and submitted Mr. Nguyen's fingerprints to the FBI. Dkt. 48-4; Dkt. 48-7 at 4.

On April 10, 2019, Personnel Security Program Manager Jacqueline Hoffman learned that the FBI had returned an unfavorable fingerprint result for Mr. Nguyen, which prevented him from obtaining an interim security clearance. Dkt. 48-4 at 2–7. Hoffman shared the information with Supervisory Human Resources Specialist Nancy Sterling Stolz (then named Nancy Lynn Sterling), who informed Baker. *Id.*; Dkt. 45 at 2. None of the NUWC personnel involved with the tentative offer or its rescission "reviewed or had access to any underlying record regarding [Mr. Nguyen's] fingerprint check at the time of the hiring decision" or were aware of Mr. Nguyen's prior EEO complaints. Dkt. 48-2 at 4, 6; Dkt. 48-3 at 4–7; Dkt. 48-4 at 4–8; Dkt. 48-5 at 4–6; Dkt. 48-7 at 4. Upon learning about the "unfavorable result," Baker and his supervisor Lucas Zahara decided that they could not leave the position vacant while a full background investigation was conducted due to the workload. Dkt. 48-5 at 4; Dkt. 46 ¶ 3.

On April 15, the Navy rescinded Mr. Nguyen's tentative offer, justifying the rescission due to Mr. Nguyen's "inability" to obtain an interim security clearance and due to NUWC's "mission needs" that prevented the Navy from holding the position open until a final clearance could be granted. Dkt. 48-10; Dkt. 48-3 at 5. The Navy ultimately selected Christopher King, a 40-year-old white male, to fill the position. Dkt. 48-2 at 5.

**B. Procedural History**

On August 20, 2019, Mr. Nguyen filed a formal EEO complaint with the Navy, alleging that it had discriminated against him based on his race, color, sex, national origin, and age, pursuant to Title VII of the Civil Rights Act, as codified at 42 U.S.C. §§ 2000e–2000e-17 ("Title VII") and the Age Discrimination in Employment Act of 1967, as codified at 29 U.S.C. §§ 621–634 ("ADEA"). *See* Dkt. 10 at 3; Dkt. 10-1 at 25, 68 (noting also 26 C.F.R. § 1614.101(b)). Mr. Nguyen argued that although he had never met any of the individuals involved in his hiring process other than Baker, they could have become aware of his race, national origin, and age because of his SF-86. Dkt. 10-1 at 69. Mr. Nguyen also alleged that the Navy retaliated against him for his 2010 and 2014 EEO complaints by rescinding his tentative offer. Dkt. 48-1 at 3. He believes that the hiring officials looked into his record and learned about his prior EEO activities. Dkt. 10-1 at 69.

The Navy investigated his complaint. Dkts. 10, 10-1. After completing its investigation, the Navy provided Mr. Nguyen with a copy of the investigative report and notice of his right to request a hearing before an Equal Employment Opportunity Commission ("EEOC") Administrative Judge ("AJ"). Dkt. 10-1 at 79. On November 1, 2021, AJ Daniel E. Leach dismissed the complaint for failure to state a claim, and the Navy issued a final order implementing that decision. *Id.* at 25–29, 34–40. On appeal, however, the EEOC reversed and remanded the case back, concluding that the crux of Mr. Nguyen's complaint was the rescission of his tentative job offer rather than the denial of a security clearance. *Id.* On remand, AJ Stuart G. Cox granted summary judgment in favor of the Navy on February 16, 2023, and the Navy adopted it in a final order. *Id.* at 59. Mr. Nguyen again appealed. *Id.* at 70. The EEOC, however, affirmed the Navy's final order on July 8, 2024, and denied reconsideration on December 2,

2024. *Id.* at 67–76, 79–82. The EEOC subsequently issued a notice of right to sue letter, which Mr. Nguyen received on December 2, 2024. Dkt. 10 at 6.

On February 6, 2025, Mr. Nguyen filed his case before this Court, and his complaint was docketed after he received *in forma pauperis* status on April 3. Dkts. 1, 9, 10. His allegations against the Navy largely mirrored those in his EEO complaint. *Compare* Dkt. 10 *with* Dkt. 10-1. He alleges that the Navy (1) failed to hire him based on his race (Asian), color (Yellow), national origin (Vietnamese), and/or age (then 59), and (2) retaliated against him for his prior EEO activities.[2] Dkt. 10 at 4–5, 8.

On September 29, 2026, the Navy moved for summary judgment, arguing that it had a legitimate, nondiscriminatory reason for rescinding the offer. Dkt. 45 at 1 ("[T]he Navy needed a new hire in the position quickly, and Nguyen turned out to be ineligible for an interim security clearance."). The Navy argues that Mr. Nguyen cannot show that this reason was pretext for discrimination or retaliation, or even make a prima facie case for his retaliation claim. *See id.*

On the same day, Mr. Nguyen moved for dispositive relief, which the Court construes as a motion for summary judgment. Dkt. 50 at 5 (stating that Mr. Nguyen is entitled to relief under Federal Rule of Civil Procedure 56). He argues that the Court can infer pretext from the entire record, including the short time between acceptance of the tentative offer and its rescission, the background-investigation records and fingerprint result, the role of and statements by Baker, and the EEOC findings. *Id.* Between the complaint and these motions, Mr. Nguyen also filed a motion in limine and moved to challenge and exclude one of the Navy's witnesses, to which the Navy responded. Dkts. 44, 49, 51.

[2] The complaint also references whistleblowing as a basis for the alleged discriminatory conduct. Dkt. 10. Based on the parties' briefing, the whistleblowing allegation is part of the retaliation claim.

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the initial burden of "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1122 (9th Cir. 2024) (quoting *Anderson*, 477 U.S. at 256).

The evidence relied upon by the nonmoving party must be able to be "presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also* Fed. R. Ev. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presume[d]." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). However, "'[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477

U.S. at 255). Consequently, "a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan,* 497 U.S. at 888 (internal quotation marks omitted).

## IV. DISCUSSION

Mr. Nguyen argues first that the Navy discriminated against him based on his race (Asian), color (Yellow), national origin (Vietnamese), and age (59), and second that the Navy retaliated against him for his prior EEO activities. Dkt. 10 at 4–5, 8.

### A. Discrimination Claim

Mr. Nguyen argues that the Navy refused to hire him based on his race, color, age, and/or national origin. Dkt. 10. The Navy responds that the record shows a nondiscriminatory, legitimate reason for rescinding his offer: the offer was tentative and contingent upon security clearance; an interim security clearance required a favorable fingerprint result under Department of Defense policy; Mr. Nguyen received an unfavorable result; and the position had to be filled quickly due to mission needs. Dkt. 45. The Navy contends that Mr. Nguyen's records and allegations are insufficient to create a genuine issue of material fact that this explanation is pretextual. *Id.* The Court agrees with the Navy.

"[W]hen responding to a summary judgment motion" in a discrimination suit under ADEA or Title VII, a plaintiff "may proceed by [either] using the *McDonnell Douglas* framework," as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" the defendant's contested conduct. *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004)), *abrogated on other grounds by Nat'l Ass'n of African*

*Am.-Owned Media v. Charter Commc'ns, Inc.*, 915 F.3d 617 (9th Cir. 2019); *see also Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 888 (9th Cir. 1994) ("[T]he burdens of proof and persuasion are the same" for Title VII and ADEA claims). "Under either approach, staving off a motion for summary judgment on disparate treatment claims under ADEA and Title VII entails three steps": prima facie case; a legitimate, nondiscriminatory reason; and pretext. *Opara v. Yellen*, 57 F.4th 709, 721, 723 (9th Cir. 2023).

A plaintiff can use either *McDonnell Douglas* factors or direct or circumstantial evidence to demonstrate a prima facie case. *Id.* at 721. A plaintiff's "requisite degree of proof . . . is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis*, 26 F.3d at 889; *see also Schnidrig Columbia Mach., Inc.*, 80 F.3d 1406, 1410–11 (9th Cir. 1996) ("We require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by the factfinder, upon a full record") (internal citations omitted).

Establishing a prima facie case of disparate treatment via the *McDonnell Douglas* factors generally requires a plaintiff to show: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). And to establish a prima facie case of age discrimination, the employee must demonstrate that (1) he was within the protected class; (2) he applied for a position for which he was qualified; and (3) that a younger person with similar qualifications received the position. *Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987).

Mr. Nguyen can make a prima facie case here. It is undisputed that Mr. Nguyen is a member of a protected class for race, color, national origin, and age. Dkt. 10-1 at 72; Dkt. 45. It

is undisputed that he was qualified for the position and that his offer was rescinded. Dkt. 10-1 at 72; Dkt. 45. Mr. Nguyen further points to his resume, which allegedly identified his Vietnamese background. Dkt. 50 ¶ 6. Baker also acknowledged Mr. Nguyen's accent while conducting the interview and that Mr. Nguyen was coming out of retirement. Dkt. 46 ¶ 5; Dkt. 18 at 88. Indeed, the Navy later selected someone else, who was identified as a White American male under the age of 40. Dkt. 48-2 at 5; Dkt. 10-1 at 69; Dkt. 55-1 at 7; *see Lui v. DeJoy*, 129 F.4th 770, 777 (9th Cir. 2025) (discussing Ninth Circuit case law that holds that the requirement that "similarly situated individuals outside [the] protected class were treated more favorably" can be satisfied by showing that the position was filled by a person outside the protected class or that the position remained open and the employer continued to seek applicants from persons of the complainant's qualifications). For all these reasons, Mr. Nguyen has established a prima facie case of disparate treatment based on race, color, national origin, and age.

The burden of production then shifts to the Navy "'to articulate some legitimate, nondiscriminatory reason' for the adverse employment action." *Lui*, 129 F.4th at 779 (quoting *McDonnell Douglas*, 411 U.S. at 802); *Opara*, 57 F.4th at 723 (citation omitted). Here, the Navy has provided a reason: "the Navy needed a new hire in the position quickly, and Nguyen turned out to be ineligible for an interim security clearance." Dkt. 45 at 1; Dkt. 18 at 88 ("[P]urpose of this job announcement was to replace a retiring employee. . . . The decision to withdraw the offer was made solely on the uncertainty about the security clearance and the length of time that would be required."). The Navy articulated a legitimate, nondiscriminatory reason, satisfying the second step.

The remaining third step is ascertaining whether there is evidence from which a reasonable jury could find the employer's proffered reason to be pretextual. *Schnidrig*, 80 F.3d at 1409. To establish pretext, a plaintiff must show either that "a discriminatory reason more likely

motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affs v. Burdine*, 450 U.S. 248, 256 (1981). A plaintiff can meet this burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951–52 (3d Cir. 1996) (internal citation omitted)). Direct evidence of discriminatory motive may also establish pretext. *Opara*, 57 F.4th at 723. But "mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

Mr. Nguyen has not met this burden. He argues that the Navy's stated reasoning is pretextual based on the following: background-investigation records; the unexplained "unfavorable fingerprint result"; the short time between acceptance of the tentative offer and its rescission; Baker's role and statements about Mr. Nguyen's retirement status and accent; and EEOC findings. Dkt. 50 at 5.

But the evidence regarding the background-investigation records and fingerprint result supports rather than undermines the Navy's explanation. The Department of Defense Manual 5200.02 § 7.16(b) required a favorable fingerprint check result for the issuance of an interim security clearance. Dkt. 45 at 8; Dkt. 48-6 at 8–9 (listing favorable fingerprint results as one of the minimum requirements for an interim security clearance); Dkt. 48-7 at 5 ("Our regulations say we cannot issue an interim clearance if you have an unfavorable fingerprint result. The way you can still hire someone is you can wait until the investigation fully adjuvates and then you can bring them onboard, and that can take 12 months or longer."). The FBI also does not give access to underlying records or reasons for its fingerprint check results. Dkt. 54 at 4 (citing Dkt. 45 at 5;

Dkt. 48-7 at 4; Dkt. 48-4 at 5); *see also* Dkt. 48-6 at 8–9; Dkt. 18 at 55 ("[Hoffman is] looking on the FBI site because they would be the agency to contact. They hold all the fingerprint results."); *id.* at 62 ("[Baker and the hiring team are] not provided the specifics in regards to your fingerprints results."). And although Mr. Nguyen claims that Department of Defense Directive 5220.6 § 4.3 was not correctly followed, Dkt. 10 at 9 (requiring an opportunity to respond to a final unfavorable clearance decision), that section does not provide the entitlement that he believes. First, the plain language of section 4.3 appears to apply only to "final" unfavorable clearance determinations, not interim clearance decisions. Dkt. 10-1 at 87. Second, section 2.5 provides that Directive 5220.6 does not apply where a security-clearance matter is withdrawn for administrative reasons without prejudice to a later determination of whether granting or continuing a clearance would be clearly consistent with national interest. *Id.* at 86. Here, the Navy did not make a final determination that Nguyen was permanently ineligible for a security clearance. Rather, it discontinued the hiring process before a final clearance adjudication occurred. Accordingly, neither Manual's section 4.3 nor Directive's section 2.5.3 required the Navy to provide Mr. Nguyen an opportunity to respond to the unfavorable fingerprint result before withdrawing the tentative job offer, much less investigate the reasons behind the unfavorable result.

Nor does the short time between acceptance and rescission support a finding of pretext. Mr. Nguyen was notified that his offer was explicitly "tentative" and conditioned on obtaining a clearance. Dkt. 45 at 8; Dkt. 48-9 at 2 ("You have been tentatively selected … This Position requires a Secret Security Clearance…."); Dkt. 50 at 3 ("The record establishes that … Mr. Baker stated that the position was contingent upon the security-clearance process…."). And while it appears the Navy could have theoretically waited for the full clearance, there is no evidence to dispute that it needed to fill the position quickly. Dkt. 45 at 8; Dkt. 18 at 86; Dkt. 48-

10 ("The Command has elected to withdraw this offer due to your inability to obtain an interim security clearance for the required access level. Due to mission needs, management is unable to hold the position open until a final clearance could be granted."); *see also* Dkt. 46 ¶¶ 2–3. The short period between Nguyen's acceptance of the tentative offer and its rescission does not, without more, support an inference of discrimination where the offer was expressly contingent on obtaining the security clearance and the Navy had an immediate operational need.

With regard to Baker's role and statements, nothing in the record suggests that Baker's decision was motivated due to Mr. Nguyen's accent or age. To the extent those attributes were apparent during his interview, they did not dissuade Baker from hiring him. Baker reviewed Mr. Nguyen's resume and talked to him first and then extended an offer. Dkt. 48-2 at 7 ("It was just a business-based decision. I wanted to hire him, which is why the offer was extended. The only thing that changed was the failed background check.").

Ultimately, Mr. Nguyen has not pointed to evidence from which a reasonable jury could find pretext. If Mr. Nguyen could show, for example, that the interim clearance requirement had not been applied consistently toward applicants outside his protected classes, that could support such a finding. But there is no such evidence; to the contrary, the Navy withdrew another applicant's tentative offer one week earlier for the same reason. Dkt. 48-2 at 5; Dkt. 18 at 88 ("Mr. Baker stated that this was actually the second candidate within a week to receive an unfavorable fingerprint result. Mr. Baker stated that they withdrew both of these offers for the same reason…."). Nor is there any evidence of a pattern of discrimination. In fact, Baker's statement in Mr. Nguyen's EEO proceedings shows that Asian applicants were among both the candidates hired and those who received offers but ultimately did not accept them. Dkt. 48-2 at 6.

In his complaint, Mr. Nguyen pointed to Zahara's April 2019 email to Sterling as evidence of motivation:

> Wait what! Is this the second person in 1 week that Dan selected that cannot get a clearance, is Dan recruiting at the county jail? Wasn't he previously a DOD employee? What is happening with all of our hiring actions!!! We are now down to like 1 or 2 out of 10ish actions this calendar year.

Dkt. 10-1 at 92. While the email is not tactful, it does not show disparate treatment on the basis of age, race, color, or national origin; rather the email shows that Zahara found the lack of clearance to be frustrating. *Id.* "[W]hen evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal *prima facie* case based on a *McDonnell Douglas* type presumption." *Wallis*, 26 F.3d at 890. Because Mr. Nguyen has not shown that the Navy was motivated by unlawful discrimination or that its reasoning is unworthy of credence, a reasonable jury could not conclude that his injury was based on race, color, national origin, or age. The Court grants summary judgment in favor of the Navy on this claim.

**B. Retaliation Claim**

The Navy argues that the retaliation claim fails because Mr. Nguyen cannot provide evidence of causation to establish a prima facie case. Dkt. 45 at 9. The Court agrees.

To establish a prima facie Title VII and ADEA retaliation claim, a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997) (Title VII); *Villiarimo*, 281 F.3d at 1064; *Hashimoto v. Dalton*, 118 F.3d 671, 675 n.1 (9th Cir. 1997) ("[T]he ADEA anti-retaliation provision is 'parallel to the anti-retaliation provision contained in Title VII,' and … 'cases interpreting the latter provision are frequently relied upon in interpreting the former.'").

The Navy does not dispute that Mr. Nguyen can show the first two elements. Dkt. 45 at 9. The filing of EEO complaints is a protected activity. *See* 42 U.S.C. § 2000e–3(a); *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). An adverse employment action is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray*, 217 F.3d at 1242–43 (internal quotation marks omitted). "We have found that a wide array of disadvantageous changes in the workplace constitute adverse employment actions." *Id.* at 1240–42 (noting that lateral transfers, unfavorable job references, and changes in work schedules could constitute adverse employment decisions). Rescinding a job offer would be an obvious deterrent to protected activity.

The Navy argues, however, that Mr. Nguyen's retaliation claim fails as a matter of law because he cannot prove the third element. Dkt. 45 at 9. Mr. Nguyen cannot show a causal link between the failure to hire him and his protected activity because no one involved in the decision to withdraw the offer knew of his previous EEO complaints. *Id.* And even if a prima facie case can be made, the Navy had legitimate reasons for rescinding the offer. *Id.* at 8 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *Babb v. Wilkie*, 589 U.S. 399, 406 (2020)).

For the third element, awareness by the decisionmaker of the protected activity is critical. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir. 1982) ("[A]t the time [the district manager] made the decision that directly resulted in the adverse action against [one of the plaintiffs], he did not know that she had engaged in a protected activity. This breaks the requisite causal link"). Mr. Nguyen argues in his brief that he told Hoffman about his prior activity. Dkt. 53 at 3, 4. But there is no evidence in the record that Baker or anyone else involved in the rescission had knowledge of Mr. Nguyen's EEO activities. Dkt. 48-2 at 4; Dkt. 48-7 at 4; Dkt. 48-5 at 4; Dkt. 48-3 at 4. And contrary to the argument in his briefing, Mr. Nguyen's sworn

statement in his EEO proceedings says only that he believed the hiring officials "looked into [his] record." Dkt. 48-1 at 5, 7–8 (repeating this statement twice). Nor is there evidence that Hoffman was the decisionmaker. There is nothing from which a reasonable jury could infer that Baker and Zahara withdrew the tentative offer because of EEO activity that occurred between five and ten years earlier.

And even assuming a prima facie retaliation case could be made, it would fail at the pretext stage for the same reasons as the discrimination claim. The Court grants summary judgment in favor of the Navy on Mr. Nguyen's retaliation claim as well.

## V. CONCLUSION

For the reasons explained above, the Court ORDERS:

1. The Navy's motion for summary judgment (Dkt. 45) is GRANTED.
2. Mr. Nguyen's motion for dispositive relief (Dkt. 50) is DENIED.
3. All other pending motions (Dkts. 44, 49) are DENIED AS MOOT.
4. The Court will enter judgment and close the case.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 23rd day of November, 2026.



Tiffany M. Cartwright
United States District Judge